Good morning, Your Honors. Andrew Chang this morning for Plaintiff's Boons. Also appearing is Dee Arnell. She'll be arguing on behalf of Plaintiff Malago Rivera. And we'd like to split our time into ten minutes each with approximately eight minutes for opening and then two minutes for rebuttal, if the Court would indulge. Thank you. Your Honors, the briefs lay out all the salient points. What I wanted to do in my time today was to focus on what I think is maybe the most critical issue of policy interpretation in this case. And that has to do with a policy like here that on one hand excludes harm resulting from intentional or criminal acts, and on the other hand covers harm resulting from an accident, occurrence, negligence of an insured. And what is the situation? The question in this case is what happens if both operate independently to cause harm to a third person? Now the policy does not address that. It addresses it in other sections of the policy, in the property coverage section where there's 22 items of exclusion and there's an item 23 that addresses what happens if there's multiple causes. Also in coverage C of the property policy, section of the policy. Similarly, 14 items of exclusion, 15th item says what happens if multiple causes, an excluded risk and a covered risk. What do we do with the provision in the policy that essentially imposes joint liability on the other spouse depending upon intentional conduct? In this case, I guess it's, is it Mrs. Rivera? Right. Who would be under that provision of the policy, she's bound by the intentional acts of her spouse, the other insured. You're referring probably to the joint obligations provision. Yeah. Your Honor, that provision doesn't even appear anywhere in the liability section of the policy. And if you read that language in that. Does it appear in the policy at all? It does appear in the policy. Okay. Yes. Okay. It does appear in the policy and it appears in the section on the insuring agreement. And it doesn't say what I think Your Honor was suggesting it says, maybe, that it relates to the intentional or criminal act of an insured. It only says. Well, isn't it written for the situation where you have, I'll use the term an innocent spouse, to differentiate it from the finding of fact that we have from the referee or the judge on reference, whatever we're calling the eligible spouse. The LA County Superior Court judge who found that the spouse in this case was 49% negligent. But isn't that clause written to cover a situation where the marital community is sued for the tortious acts of one of the spouses and the other spouse is either covered or not covered depending upon the conduct of the acting spouse. Am I correct? I believe Your Honor, it's not correct. Not correct. Okay. It doesn't say that in this policy. If the insurance company wanted it to say that, it would have said that. What this says is, this is what I wanted to read. The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibility, acts and failures of a person defined as an insured person will be binding upon another person defined as an insured person. This policy provision, a very reasonable interpretation of this provision is this applies to things like obligations to deal with the insurance company in this policy. For example, the duty to cooperate with the insurance company when you file a claim. The duty to submit to an EUO. The duty to provide notices. Is that what it means or does it mean that the acts, in this case of Mr. Rivera, who is an insured person under this policy, will be binding upon Mrs. Rivera as another insured person? Isn't that what it says? Well, it's no. Well, it does for purposes of the terms of this policy. And that's what I'm saying. Why couldn't that be? Let me follow up on Tom's question. You know, why couldn't that be read to mean it will be binding in the sense that she can't claim that what the husband did was other than intentional? No one disputes that it was intentional. Right. Right. So it's binding in the sense that it's it's intentional. She can't claim it wasn't. That's fine. But that doesn't address whether she didn't have some independent negligence. Would that be a way to interpret this? Absolutely. That's that's another. I mean, that is a possible interpretation. I think this clause is so generally written and vague that it can mean a lot of things. Now, does it mean what Allstate now says it means? That's their interpretation of the policy, but it's certainly not the only interpretation. And here's what I wanted to. So your argument now is that what we're really dealing with here is an ambiguous provision that we should construe against the insurer or because it wrote the language. Well, certain conceding that my reading of the policy is one way that you could read that language. Is that correct? Well, I wouldn't I don't concede that. But I think that there are many. You have to, though, if you're going to make an ambiguity argument, you have to make that concession, Mr. Chang. No, I don't know, because all I have to say is that our interpretation and other interpretations are reasonable. But I'm certainly not conceding yours. Allstate says, and I don't know. It's not ambiguous. Your interpretation is the only interpretation. No, no, no. I think they're well, ours is the best. Ours is the most reasonable. The best and only? It can be interpreted several ways except yours, I think is what he's saying. Okay, Mr. Chang. All right. I wanted to ask you about the Ninth Circuit cases dealing with this problem. Say, for example, the case of the teacher who was convicted of molestation and then the wife is. How do you deal with that? Well, it's very close to point, isn't it? No. As a matter of fact, they're not in point at all. And for the simple reason, none of those cases dealt with what we have in this case. And let me say let me first say why, and then I'll explain a little bit more. Those cases, all of them, dealt only with a dependent, concurrent cause of injury at best. For instance, the spouse of the teacher failed to control or supervise her husband. And that failure, which may be arguably is negligence, was dependent upon the criminal act in achieving its objective. And it's not dependent, meaning, you know, they combined to cause, because that's not the test. The test is, and Partridge makes this clear in other cases since it, and I want to get to those. They made clear that there's a big difference between a dependent, concurring cause and an independent, concurring cause. Partridge gave the example of the filing of the trigger on the gun, that it didn't cause the negligent driving. But they both separately and independently combined to cause harm. That's what we have in this case. And the reason we have that in this case and why we don't have that in Gilbert Castro and the other cases is the simple reason that we are not alleging, and there are no facts suggesting that Milagro's negligence was only in, had anything to do with the failure to control or supervise her husband. We accept the fact that he acted intentionally and he, she had nothing to do with his harboring that intent and doing the act. It wasn't a failure to control or supervise or protect. It had to do with her making affirmative misrepresentations to Officer Boone, the victim, the third party. So this case is very much like that Pamela case that the, that's referred to in our Court of Appeal opinion here in this Boone case. Where the wife of the abuser, it didn't have anything to do with her controlling or supervising her husband. It had everything to do with encouraging the children to come to the house. And so she was affirmatively making an act of negligence that was independent of his own criminal intent and act. And I think that is a critical distinction in this case and something that Gilbert and Castro didn't have to deal with. So it didn't deal with it. Gilbert and Castro are also different for reasons my co-counsel will explain, but that is the, for my purposes here today, that's the fundamental difference. And that's why those cases aren't good authority for this case because they didn't consider that and they didn't have that. For purposes of race judicata, is all state in your opinion bound by the referee's factual determination as to the contributory negligence of both spouses? Absolutely, we feel that. One of the things that was not clear to me from reading your briefing is exactly what Officer Boone knew when he arrived at the location. Well, I think I'll let co-counsel speak to that. She was going to address some of those issues. If one of you could help me with the facts on that, it wasn't entirely clear to me. I'll turn the page just so I touch on it. That's the critical point I wanted to make. I just wanted to point out also that this whole any insured language, too, that the insurance company looks to, Gilbert and Castro look to, that evolved. If you look at the history of that, any and the, and what that means, that evolved from first party property fraud cases. Which is important to point out because, like Gilbert and Castro, those involved cases where the bad insured lied, did something intentionally defrauded and tried to get benefits. Then the question is, what does this quote unquote innocent co-insurer, the spouse, what does she get to get the benefits even though her husband lied to get them? And those cases deal with that language, but only because there's no question in those cases, like Gilbert and Castro, that there's no question and unlike here, that the spouse did anything that was a covered risk under the policy. So in other words, the whole evolution of the any insured discussion rests upon principles and facts that aren't applicable here. We have a different kind of case here, and that's why. In a community property state, don't we have to acknowledge the fact that the marital community is essentially the insured person under this policy? The question is, does the innocent spouse get any kind of coverage or does she have any legal responsibility for the acts of her husband? No, not for the acts of her husband, but for her own acts, absolutely. You don't deny that if she had done nothing and he had been found 100% responsible for shooting Officer Boone, she would not be entitled to coverage under the terms of this policy? We do not deny that. Absolutely. This has everything to do with her, co-counsel wants to correct me if she can, I heard something over there. I know. She's been waiting. So I'll let her get up here. But no, in this case, we don't have that anyway. Thank you. I would just like to reserve a little bit of time. Okay. The baton has passed. Yes, I'm jumping out of my chair over there. If it pleases the Court. Your Honor, first, Justice Tillman, I'll tell you, I will concede that which you asked opponent to concede. The very fact that you might have several questions about what does it mean that joint obligations clause is all we need, really, to win this appeal. Because it must be strictly construed against the insurer. If they had wanted to say in the policy what they say five times in their brief is what it means. If they had simply said that, oh, any insured means that if one insured commits a criminal act, even if the other insured is negligent at the same time, independently negligent, and it concurs to cause harm, nobody has coverage. If they had said that, any layman could read that and understand it, and then you could say that's what it means. And five times in their brief, they say that's what it means. And that's what the joint obligations clause means. But it doesn't say that in the policy. And even if it did, alternatively, they can't do that. They can't do it for two reasons. One is also a matter of a policy term, a contractual promise that they automatically amend their policy to conform to State law. And so we have State law that says you can't do that. It would be illusory. You must provide coverage for every independent insured, including if they're married. We don't discriminate against married couples. Here's two insureds. They both have separate coverage. There's a separate coverage provision written in by virtue of even if you look at 533 in context. Are you saying that they couldn't write a policy that says if any insured commits an intentional act, there is no insurance period? They may not. Insurance code. Not that that's what they said here, but why can't they do that? Insurance code section 530 prohibits it. What does 530 say? 530 is some very archaic language, but it does basically say in paraphrasing that where there is concurrent causation and one of them is a covered peril? That's what I'm saying. They could make it not a covered peril. Couldn't they say if one insured commits an intentional act, there is no insurance period? Nothing's covered? Well, I guess the point is that negligence in a liability policy has got to be covered. How could you say here's a liability policy, pay your premiums, but by the way, negligence isn't covered. That's the whole point of a liability policy is we're going to defend you for your negligence. Well, I suppose there could be some fact pattern where they give such particular language that maybe it would fly, but I will tell you the Howell case, which they don't even cite, let alone distinguish, specifically says insurance code 530 cannot be written out of a policy because it would render the policy illusory. And they don't address it because they know it kills their argument. If you rely on 530, then what does 532 do in your argument? 532 is the opposite. It's saying that a remote cause, an extremely remote cause, though covered as negligence, will not be covered if the efficient proximate cause, the main proximate cause, a non-remote cause is an excluded peril. And I will agree that originally the language, it seems to me, if you rely on 530 and 532 comes into play, you lose. No, Your Honor, not at all. And indeed, this Court does not need to try to figure out how 530 and 532 interplay because the California Supreme Court has already done that about five decades ago in the Sabella case. And in Partridge, Partridge applied Sabella, which was a first-party property case. Sabella applied it in a first-party context and said, here's what it means, 530 and 532 together, here's how we're going to construe that. And this Court is bound by that, the highest court of the state in applying state law on a diversity case. And Partridge said, let's apply it in a third-party liability case and said the same thing, and that where the covered risk is so remote, then there's no coverage. But where there are concurrent causes and one of them is a substantial factor in causing the harm, and really this whole case is about causation. And you will note that my opponent's brief ignores the results from language, even in their own exclusion clause, at all costs. They use ellipses to eliminate that language. They don't want to address the idea that when harm arises from a covered peril, concurrently with harm arising from an excluded peril, they must provide coverage under Partridge. But what do we do about the fact that the actual harm was the injuries suffered from the gunshot wound, that it's almost a but-for causation analysis, but for the fact that Mr. Rivera shot Officer Boone, Mrs. Rivera's conduct wouldn't have contributed any harm? Well, it's true that if he hadn't shot anyone, there would have been no harm. But the Partridge case, the Sebella case, and Garvey, which reaffirmed in 1989 the Partridge case, specifically excluded that but-for argument. Could you help me with my factual question that I asked Mr. Chang? What did Officer Boone know from his interview? I would love to address that question, Your Honor. Thank you for reminding me. Allstate Insurance Company gives you 18 pages of facts in their brief, all kinds of facts that they could have marshaled to defend her, my client, Milagro Rivera, in the underlying case, which I pray that they would have done. Because you know what? I don't know that had they given her proper defense, she would have lost the case. I don't know that the fact finder in a jury trial on a, you know, three-week-long case would have found her to be independently negligent such that the firefighter's rule does not apply. Had that been the situation, she might have walked out with a defense. The peace of mind that she had was in good hands with Allstate. And she would have said, I'm very sorry for Mr. Boone, who's got shrapnel lodged near his spine, I'm not going to lose my home where I'm raising my 10-year-old son. Can you come back here in a minute? Yes, okay. If I must. Thank you. The point is, Your Honor, is I wasn't there for the trial by reference. But the judge, in a proper procedure that has been affirmed as recently as 2002 in the Hamilton case by the California Supreme Court, which again, my opponent doesn't even cite, let alone distinguish, did exactly what she's allowed to do when her insurance company abandons her. She assigned her rights. I understand all that. Would you please tell me what the facts are? I don't know, because they took 12 depositions in this bad faith case that were never taken in the underlying case. They took not one deposition in a year and a half that they defended her. The only thing I can find out from the record is that the reference judge found 49, 51 percent. Is that it? There was a lot of evidence taken in the bad faith case that shows that the reference judge heard evidence, cross-examined the witnesses, took offers of proof from a handful or a dozen witnesses that were there waiting to testify, and made factual findings. There's no evidence of collusion. The fact that Ms. Rivera had no money to take depositions, hire experts on police practices, bring up whether or not the Boone defendant plaintiff in the underlying case was comparatively negligent. What kind of evidence of collusion do you need where she assigns everything to her opponent? That's perfectly lawful, Your Honor. That's perfectly lawful. But do you really need to prove collusion in the face of that assignment? You absolutely do, Your Honor, because Hamilton. Why don't you just say it's proven? One person controlled both sides of that proceeding. Not at all, Your Honor. She had an attorney. She avoided. They were pretty stupid if they didn't. No. Your Honor, the undisputed facts in this case is that Milagro Rivera did have a lawyer who represented her, who argued against liability, who argued to reduce damages, who did his best to read from her deposition, which, by the way, she attended the deposition in the underlying case without benefit of counsel. Now, you want to talk about one-sided. What's a Hispanic woman who barely speaks English going to do at a deposition without a lawyer there? She basically went back and forth. I was afraid. I'm sorry. I didn't mean to hurt anybody. That was what her underlying deposition says. But that's not before this court, because what we have is the highest stake court stating unequivocally that this judicial procedure is acceptable. She didn't even have to hire a lawyer and defend at all. She could have allowed a default prove-up where it really would have been one-sided, and that would have been acceptable. That is not evidence of collusion in any way. She's entitled to do the best bargain she can under the circumstances where her insurance company abandoned her. You're over your time, so finish your sentence and then the ---- I'll do that, Your Honor. At any rate, in terms of justice, there can be no doubt that they should be bound by the underlying judgment. They should not be able to reach back, as Hamilton says, for due process, having abandoned their insurance. Thank you very much, Your Honor. Roberts. Thank you, Ms. Yernal. Before we hear from counsel, I'm wondering, Ms. Yernal and Mr. Chang, if you might whisper to one another and see, thought just occurred to me, whether you'd be interested in having us certify this case to the California Supreme Court, whether what your position on that will be when you come back on rebuttal. Now, I'm going to ask the same thing in a minute of counsel. Good morning. Good morning, Your Honor. Thank you. Several significant ---- Get your name for the record, please. I'm sorry. Gregory Michael McGregor on behalf of the Apple Lee Allstate Insurance Company. There was no abandonment here of the insured. Allstate provided the defense for Milagro-Rivera right up ---- Until her husband pled guilty. Right up to the point where there was a conviction and ---- And then you abandoned her. With advice of counsel and with notice, yes, the defense was terminated. And there's a reason for it. You know, there's a tremendous amount of discussion in the briefs about causation reaching back to the Sabella and the Garvey cases. But the exclusion that triggers everything here excludes coverage for bodily injury or property damage intended by or which may reasonably be expected to result from the intentional or criminal acts or omissions of any insured person. It's significant that the exclusion is not triggered by conduct or triggered by theory of liability. It's triggered by the harm. The harm is what triggers this exclusion in this case. That's the same exclusion that was ---- But the harm from the husband, right? I mean, maybe you can answer the question that I unsuccessfully tried to get an answer to. I'll try. And that is, you know, what were the facts with regard to Mrs. Rivera's negligence? Okay. Let me jump ahead to that. We now have a record that we didn't have before. The record we have shows that Officer Boone, and he testified, his deposition is in the record, he testified that he never spoke to Malagro Rivera. Now, it's alleged that he was told by her at the site that her husband was asleep and he wasn't dangerous. He testified he never spoke to her. He testified that she wasn't there. He testified that his partner, Officer Solis, said he reached her on a cell phone and told Officer Boone that the husband was there. She didn't know how many guns he had. And Officer Boone testified under oath that he was in fear of his life, that he showed up with his ballistic helmet, as did all the officers. He was the one who called for backup. All officers showed up with ballistic helmets, Kevlar vests, and armed with deadly force, expecting to encounter deadly force. That's what he testified to. It also came out in the discovery in this bad faith case that none of this was presented to the judge who tried the reference. He was not told that Malagro was not at the premises. He was not told that she did not speak to Officer Boone. He wasn't told that. The judge wasn't told that. He wasn't told that within the week preceding this event, the same LAPD had appeared at the Rivera residence and had confiscated five assault rifles. And he wasn't told that the belief was in Stansberry, the mental health worker, that Mr. Rivera was extremely dangerous and was definitely armed. Now, the reason that all becomes important is because the question was raised, well, was this collusion? Of course it was collusion. Both sides controlled the proceeding. Jerry Ramsey, the lawyer hired to represent Malagro Rivera, stood up and his entire defense consisted of, I'm standing under the case of Transamerica v. Sampson, which is the case that basically sticks the insurance company who doesn't defend with the results. He sat down. He did not cross-examine a witness. He gave no closing argument. The only argument he made to the Court was that Malagro Rivera's culpability should be assessed at no more than 49 percent. Now, I would like to address this issue of culpability. There's a reason that the Gilbert case and the Castro case and a more recent case called Farmer v. Allstate at 311 F. It's up second, 388, decided by Judge Wilson. It's a district court case. Don't go into causation. And the reason is that this exclusion doesn't deal with causation. It deals with the harm. Where there's one harm and that harm is intended by or reasonably to be expected by the criminal act of any insured, there's no coverage. There's no coverage. There's no defense. In this case, they can say 49 percent if they want. But the facts tell you the story. But wasn't there in Partridge just one harm? Somebody got shot? Partridge? Yes. But this exclusion wasn't involved in Partridge. That's a very good case to distinguish. That case was about whether which policy provision covered in a particular set of facts. And the court determined there that we were dealing with two independent, completely independent causes of action or acts. The negligence of driving off the road negligently and the negligence of filing down the hair trigger and creating the risk. That did not deal with a situation, Your Honor, where the exclusion was governed by the harm. If we had a second harm here that was caused by Milagro Rivera, then there would be a different analysis. But we have one harm, and there's no question that that harm, no matter what Milagro Rivera did, would not have occurred but for the shooting of her husband. So there is not an independence of those two conducts. Hers is entirely dependent. I'm sorry. Isn't all State bound by the factual determination by the reference judge, though, since you essentially relinquished? I won't use the pejorative term abandoned, but you left Mrs. Rivera to fend for herself. Well, under the Pruin case, the insurance company is not bound unless it can be shown that there was an independent process whereby the facts were independently adjudicated and the process was free of fraud, abuse or collusion. We would argue. But your opponent says, you know, what can you expect Mrs. Rivera to do? She doesn't have the assets to go out and hire good legal counsel to defend her. I mean, she's basically left to pro se. Your Honor, she assigned her claim before the proceeding happened. But that's a perfectly legitimate – I mean, it happens all the time in these situations. Your Honor, I would respectfully suggest that is a suggestion of collusion. It's clear that a stipulated judgment won't support this. We know that. That's clearly the law in California. Now we're talking about the gradient between a stipulated judgment which clearly doesn't pass muster and a fully litigated jury trial where every side is represented by counsel with a good-faith attempt to ferret out the facts. That's the far other end of the spectrum. Clearly, this one is within what the zone that Pruin envisioned as a potentially collusive judgment. And we would argue that if by – if this Court were to reverse and remand to Judge Klausner and litigate whether or not there was collusion, because those facts that were found by that judge and that determination are so at odds with what we now know to be the truth, and we know why. But the insured is left defenseless. What is so wrong as a matter of public policy with entering into a stipulated judgment and securing as consideration a promise from the plaintiff that it won't execute that judgment against the insurer, the former insurer? I would defer to the courts of California which have decided that that does not pass muster. That is exactly what doesn't pass muster. I suppose what's going on is the notion of fundamental fairness, because as Judge Kroski mentioned in the Pruin case, you don't – just because the insurance company has made a decision not to provide the defense does not mean the insurance company loses its right to due process. Now, you're absolutely right. There's a risk to be involved, and that's to be litigated. But the notion that we now will, on a very close call because there is some causation, some remote notion, that Malagro Rivera was aggressively negligent as opposed to passively negligent, like the wife in Gilbert or the mother in Castro and negligent supervision, that somehow that triggers coverage, which of course is counterintuitive. The notion that the more culpable she is, the more coverage she gets doesn't make a lot of sense. That's the function, by the way, of the joint liability provision. I'm getting ahead of myself. But if we end up going back down there, that's what we will litigate. I would like to address also the notion of this joint liability. The suggestion that it has to do with duty to cooperate and showing up for an examination under oath, but not what it – but not the conduct that is within the parameters of the insuring provision is nonsensical. It says in part, acts or omissions of you or your are binding upon any other person described as you or your. And every – What does that mean? Binding doesn't – it just says binding. It doesn't say disqualifies you from coverage. Well, if you read it in conjunction with the exclusion, Your Honor, I would urge that the fact that the bodily injury and property damage was intended by or reasonably expected from Rinaldo Rivera's conduct means there's no – the exclusion is triggered. It's also triggered as to Malagro because she is bound by his action. And that is, in fact, what the Gilbert Court found, what the Castro Court found, and what the Farmer Court found. And they all went through the same analysis to get there. Indeed, this joint liability provision, I would argue, is a direct response to this Court's invitation in the 1987 case of Borber. In that case, we had a situation where the word uninsured was used, and the Court said, that's not clear enough. We're not going to bind the so-called innocent co-insured. And the quote was, had American states intended that the wrongful act of any insured would void the policy, it could have unambiguously drafted and included such language in the contract. Now, it is true, Your Honor, that in every provision where this might apply in the contract, all state might have written a policy that said – that repeated the joint liability provision in each of those exclusions. But that's not the way an insurance policy is written. And it is written to give effect to each provision throughout the entire policy, if at all possible. And finally, Your Honor, I would like to deal with the notion of the finding in the Court of Appeal that Malagro-Rivera, her conduct was independent for purposes of the Firefighter's Rule. Much has been made of this, because what you do is you take that ruling and then you graft it onto the first-party cases where causation was struggled with throughout – for the last 25 years or so, maybe 30 years. It used to be 25 years, five years goes by in a hurry. But the – where courts have struggled with this notion of causation, and you say, well, look, here's a determination that her independent negligence was an operative cause of the damage here. Well, it's independent only in the Firefighter's Rule sense. And we've briefed this, and I just wanted to touch on it briefly. The Firefighter's Rule is a public policy rule that says that if you're a firefighter or a police officer by extension, you can't sue in negligence for the person who causes the fire. Basically, it's a notion of fairness. You can't sue the person whose act basically is the reason you have a job in the first place. You're a first responder, and that's what you're supposed to respond to. And all the court found was, in the underlying case, in – in Malagra-Rivera's – in the way it was alleged, because it's not the way it turned out to be the facts, but the way it was alleged, Malagra-Rivera allegedly was at the site after the summoning of the police officers. She committed negligence by misrepresenting the level of risk or the threat level posed by her husband. And the court said, as pleaded on those facts, what she did was a little – was different. It happened after the summoning of the first responders, for one thing, and it was different from – from what caused them. So in that sense, it was independent. There's no adjudication, nor can there be, that what she did was independent of the shooting by her husband, because, as we pointed out in the brief, but for that shooting, there's no – she could have made every misrepresentation conceivable. Until the trigger was pulled, there was no action. There was no lawsuit. There was no claim. Even if she had stood on the – on the sidewalk in front of the house and assured Officer Boone, my husband is dead drunk, passed out inside, and there isn't a single weapon in the house, so please don't shoot him. And that caused Officer Boone and his partners to go in with their weapons holstered and without their Kevlar vests and so on. I think she couldn't possibly be covered even under those circumstances. I would argue that that is exactly the function of that exclusion. The harm was the shooting. The shooting was criminal. Everyone stipulated to that in this case. No one's coming here suggesting that Mr. Rivera's entitled to a defense. The way that policy works, and unless – with all due respect, this Court is prepared to overrule Gilbert or to rule as a matter of public policy that that provision should be stricken from the policy, I don't think this case can be reversed. Suppose we said, well, we're not going to reverse the Ninth Circuit case, but we're going to follow the California case. What do you think of my suggestion that this may be one of those circumstances where we ought to certify it to the California Supreme Court? I don't think it's necessary. I think this Court is armed with everything it needs to resolve this case just as the Gilbert Court was. Well, we're caught between a rock and a hard spot. I mean, we can't – we don't have the authority as a three-judge panel to overturn Gilbert, and your argument is that Partridge is either distinguishable or wrongly decided. No, I'm not suggesting it's wrongly decided. I think it's clearly distinguishable, and we've distinguished it on the facts. It isn't a case involving this exclusion. It isn't a case involving the criminal exclusion. So it's – Is there a California case involving this exclusion that goes your way? Is there a California case? Not on this exclusion. Wouldn't that suggest maybe certifying the case as called for? Your Honor, it's certainly a route you can go. I don't think, based on the cases that you have, that it's necessary, but there's – it's certainly an option available in this Court. Fair enough. Thank you all very much. Thank you, Mr. McGregor. You folks used up your time. We'll give you two minutes in rebuttal. Thank you, Your Honor. I'll be as quick as I can. First, I would ask, in terms of the facts, just because Your Honor has the curiosity for it. No, no. Don't waste your time, Your Honor. Okay. We certainly cited to the record where the facts are not as stated at all. I didn't understand as much. And further, Your Honor, Hamilton v. Maryland Casualty is the substantive statement from the California High Court that says that this is exactly a proper procedure. It says that the – no defense, no trial is required at all, but may settle upon the best terms possible. And it actually cites the Roman case, which was decided around the same time as Pruin. Pruin said that a stipulated settlement would not be allowed. In Roman v. Unigard, the appellate court said it would be allowed, and Hamilton, the California Supreme Court case, followed Roman v. Unigard and said, well, there's no defense. That's perfectly acceptable. Your Honor, there's no need to overrule Gilbert. If Your Honors wanted to certify this to the California Supreme Court, I think it would go our way. But I don't think you have a need to. It's been – those statutes have been in place for many decades. The California Supreme Court cases have been in place for many decades. They have been re-seen and reviewed and never have they been questioned. Indeed, Partridge has been cited – I shepherdized it this morning – 276 times. And it is still the law, has always been the law, applies in a third-party case, construes 530. Gilbert never addresses insurance code 530, causation, or the facts that are similar in this case. There's no need to overrule it. I think it was properly decided on what was presented to that court. That isn't what's being presented here, so there's certainly no reason. Indeed, Pinchin trusts the Ninth Circuit case, and Borber, the Ninth Circuit case, do control. Borber says if they wanted to give language that says any criminal conduct will void the policy, they could have done so. You don't see those words in this policy. They did not do so. Thank you, Your Honor. Thank you. Thank you all. Gentlemen, the case to start, it is submitted. Thank you. And ladies. Okay. Next case. Next case is 0455962, Bosley v. Creamer. Each side will have 20 minutes. Judge Nelson reminds me that 0356306, Thomas v. Price Electronics is submitted on the briefs. Thank you, Judge Nelson.
judges: T.G. Nelson, Silverman, Tallman